**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
FREEDOM MORTGAGE CORPORATION,

                      Plaintiff,

  v.

DEVIN BROCKING,

                      Defendant.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

2:23-CV-01870(DLI)(LGD)

**LEE G. DUNST**, Magistrate Judge:

      Courts in this District face a steady stream of mortgage foreclosure actions. Many of these cases are uncontested, resulting in the filing of unopposed default judgment motions. Consequently, the burden falls squarely on the courts to ensure these actions have merit and plaintiffs have complied with state and federal law prior to entering a default judgment and ordering foreclosure of someone's home.

      In recent years, "state foreclosure laws ha[ve] evolved to 'avoid the draconian consequences of strict foreclosure.'" *Gunsalus v. Cnty. of Ontario, New York*, 37 F.4th 859, 862 (2d Cir. 2022) (citing *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994)). For example, New York Real Property Actions and Proceedings Law ("RPAPL") § 1304 requires that lenders provide notice to borrowers *before* commencing litigation. "The underlying purpose of [Section 1304] is 'to afford greater protections to homeowners confronted with foreclosure.'" *Wells Fargo Bank, N.A. v. Yapkowitz*, 199 A.D.3d 126, 131, 155 N.Y.S.3d 163 (2d Dep't 2021) (citation omitted). "[T]he manifest purpose [of Section 1304] is to aid the homeowner in an attempt to avoid litigation" by addressing "a typical lack of communication between distressed homeowners and their lenders prior to the commencement of litigation" and

by "bridg[ing] that communication gap in order to facilitate a resolution that avoids foreclosure' by providing preforeclosure notice ... and an 'additional period of time ... to work on a resolution.'" *Id.* (citation omitted).

Presently before the Court is Plaintiff Freedom Mortgage Corporation's ("Freedom" or "Plaintiff's") second motion for default judgement and other relief (the "Motion") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, seeking a judgement of foreclosure and sale pursuant to RPAPL § 1301, et seq. *See* Electronic Case File Number ("ECF No.") 20. On October 17, 2023, District Judge Dora Lizette Irizarry referred the Motion to the undersigned for a Report and Recommendation. *See* Oct. 17, 2023 Order Referring Motion.

Freedom holds itself out as "one of the nation's top mortgage lenders," which "helps millions of Americans buy and refinance their homes—a key step toward achieving financial stability and success." *About Freedom Mortgage*, FREEDOM MORTG. CORP., https://www.freedommortgage.com/about (last accessed Feb. 2, 2024). However, Freedom's conduct in other contexts has been the subject of criticism by government regulators. *See, e.g.*, *CFPB Penalizes Freedom Mortgage and Realty Connect for Illegal Kickbacks*, CONSUMER FINANCIAL PROTECTION BUREAU (Aug. 17, 2023), https://www.consumerfinance.gov/about-us/newsroom/cfpb-penalizes-freedom-mortgage-and-realty-connect-for-illegal-kickbacks/; *Freedom Mortgage Corporation Agrees to Resolve Alleged False Claims Act Liability Arising from FHS-Insured Mortgage Lending*, DEPT. OF JUSTICE (Apr. 15, 2016), https://www.justice.gov/opa/pr/freedom-mortgage-corporation-agrees-pay-113-million-resolve-alleged-false-claims-act. Most recently, in October 2023, a federal regulator filed suit against Freedom noting ongoing efforts to "end[] the cycle of misconduct by repeat offenders in the financial industry." *CFPB Sues Repeat Offender Freedom Mortgage Corporation for Providing*

*False Information to Federal Regulators*, CONSUMER FINANCIAL PROTECTION BUREAU (Oct. 10, 2023), https://www.consumerfinance.gov/about-us/newsroom/cfpb-sues-repeat-offender-freedom-mortgage-corporation-for-providing-false-information-to-federal-regulators/; *see Consumer Financial Protection Bureau v. Freedom Mortg. Corp.*, No. 9:23-cv-81373-DMM (S.D. Fla. Oct. 10, 2023).

Freedom routinely files foreclosure actions and default judgments motions in this District. Based on the undersigned's review of the docket, there have been approximately 100 such motions filed by Freedom since January 30, 2021. Notably, many courts have rejected Freedom's motions due to its repeated failure to comply with New York state law, federal law, federal rules, and local rules. *See, e.g.*, *Freedom Mortg. Corp. v. Cadet*, 19-CV-3158, 2023 WL 6358070 (E.D.N.Y. Sept. 29, 2023) (Mauskopf, J.); *Freedom Mortg. Corp. v. Conaty*, No. 22CV07724, 2023 WL 7001028, at *4 (E.D.N.Y. Aug. 30, 2023) (Dunst, J.); *Freedom Mortg. Corp. v. Meurer*, No. 19CV1497, 2023 WL 6593773 (E.D.N.Y. Apr. 14, 2023) (Levy, J.), *report and recommendation adopted*, No. 19CV1497, 2023 WL 6358041 (E.D.N.Y. Sept. 29, 2023) (Chen, J.); *Freedom Mortg. Corp. v. Monteleone*, 628 F. Supp. 3d 455, 463 (E.D.N.Y. Sept. 15, 2022) (Dearie, J.); *Freedom Mortg. Corp. v. Bullock*, No. 19CV664, 2022 WL 18299810 (E.D.N.Y. Mar. 11, 2022) (Bulsara, J.), *report and recommendation adopted,* No. 19CV664, 2022 WL 4445399 (E.D.N.Y. Sept. 23, 2022) (Garaufis, J.); *Freedom Mortg. Corp. v. Powell*, No. 218CV4265, 2020 WL 4932145, at *2 (E.D.N.Y. Aug. 24, 2020) (Vitaliano, J.). In light of this disturbing track record, it appears that Freedom's conduct as an alleged "repeat offender" extends to its overzealous prosecution of faulty mortgage foreclosure actions and filing of defective default judgment motions in this District.

As set forth herein, Freedom's repeated failure to comply with the basics of foreclosure law and default judgment motion practice continues in the instant case. The undersigned therefore respectfully recommends that the Motion be DENIED.

## I.     FACTUAL BACKGROUND[1]

On or about August 2, 2019, Defendant Devin Brocking ("Brocking" or "Defendant") obtained a loan for $294,566.00 from Freedom. ECF No. 1 ¶ 6. The loan was evidenced by a note (ECF No. 1-3 at 1) which was secured by a mortgage through Mortgage Registration Systems, Inc., as mortgagee, (ECF No. 1-4 at 2) on the residential property at 33 Redington Street in Bay Shore, New York (the "Subject Property"). ECF No. 1 ¶ 7; ECF No. 1-4 at 2. On February 25, 2022, the note was transferred and assigned to Freedom. ECF No. 1 ¶ 8; ECF No. 1-5.

Since May 1, 2020, Brocking has defaulted on the terms of the note and mortgage by failing to make timely payments. ECF No. 1 ¶ 9. On February 11, 2022, Freedom claims to have provided Brocking with a default notice advising of possible acceleration of the loan and continuing default, as required by the provisions of the note and mortgage. ECF No. 20-2 at 3. On November 21, 2022, Freedom claims to have sent a 90-day default notice to Brocking advising of possible legal action pursuant to RPAPL § 1304. *Id.*; ECF No. 20-3 at 18. Plaintiff further represents that it complied with

> the notice provisions of the Mortgage and RPAPL Section 1304 and filed the information required by RPAPL Section 1306. The Mortgage was originated in compliance with all provisions of Section 595-a of the New York Bank Law and

---

[1] Given Defendant's failure to respond to the complaint at ECF No. 1 ("Complaint"), Plaintiff's well-pled factual allegations in the Complaint are accepted as true. *See* Fed. R. Civ. P. 8(b)(6); *Antoine v. Brooklyn Maids 26*, 489 F. Supp. 3d 76, 90-91 (E.D.N.Y. 2020) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). In determining whether a plaintiff is entitled to default judgment, the court is "limited to the non-conclusory, factual allegations" in the complaint. *Antoine*, 489 F. Supp. 3d at 90-91 (citing *Johannes Baumgartner Wirtschafts-Und Vermogensberatung GmbH v. Salzman*, 969 F. Supp. 2d 278, 287 (E.D.N.Y. 2013)).

4

any rules or regulations promulgated thereunder, and, if applicable, Sections 6-1 or 6-m of the Banking Law.

ECF No. 1 ¶ 12. All the aforementioned default notices, including the Section 1304 notice, were mailed to 33 Redington Street in Bay Shore, New York. *See* ECF No. 20-3 at 14, 18 & 28.

## II.   PROCEDURAL BACKGROUND

On March 10, 2023, Plaintiff filed its present Complaint against Brocking. *See* ECF No. 1. The summons proposed by Plaintiff and then approved by the Clerk of the Court were directed to Brocking at the 33 Redington Street address. *See* ECF Nos. 3 & 9. On June 26, 2023, Judge Irizarry issued a notice of impending dismissal for failure to prosecute, due to Plaintiff's failure to serve the Complaint on Brocking. *See* June 26, 2023 Order ("Plaintiff has not filed proof of service of the summons and complaint on Defendant as required by Fed. R. Civ. P. 4(l) and (m). Mere mailing of various docket entries to Defendant . . . is not a permissible method of service."). Consequently, Judge Irizarry directed Plaintiff to effectuate service and file proof of service by June 28, 2023. *Id.* Plaintiff then made a motion for an extension of time to file affidavits of service (ECF No. 12), which Judge Irizzary granted and directed Plaintiff to serve Defendant and file proof of service by July 18, 2023. *See* June 27, 2023 Order. Judge Irizzary also placed Plaintiff on notice that "[t]he Court expects all parties to adhere to the Federal Rules of Civil Procedure, the Court's Local Rules and the Individual Rules of the undersigned district judge and presiding magistrate judge and to move this case along in timely fashion." *Id.*

On July 17, 2023, Plaintiff purported to have finally served the Complaint as ordered by Judge Irizzary. *See* ECF No. 13. According to an Affidavit of Service executed by Robert

Napolitano,[2] the Complaint was served on July 5, 2023 at 7:41 AM at 7 Maple Grove Court in Baldwin, New York. *Id.* Notably, this address is different from the Subject Property where all prior notices and court filings had been sent. *See* ECF No. 20-3 at 18, 28. Furthermore, the Complaint was not served on Defendant himself and, instead, there was "substituted service," specifically, "[b]y delivering thereat [*sic*] a copy of each to, WES BRICKING, FATHER, a person of suitable age and discretion." ECF No. 13. Mr. Napolitano made the following representation regarding a conversation with Defendant's father Wes Bricking: "I also asked this person whether said premises was the defendant's dwelling place/usual place of abode and the reply was affirmative. I then asked this person whether or she resided at said premises with the defendant and the reply was also affirmative." *Id.* Subsequently, Defendant failed to respond to the Complaint. ECF No. 15. Based on the aforementioned service of the Complaint apparently on Defendant's father at the 7 Maple Grove Court address, Plaintiff requested a Certificate of Default on August 4, 2023. ECF. No. 14. On August 10, 2023, the Clerk of the Court entered a default against Defendant ECF Nos. 14 & 15.[3]

On August 31, 2023, Plaintiff filed its first motion for default judgement. ECF No. 18. On September 1, 2023, that motion was stricken by Judge Irizarry because it contained "un-applied redactions and comments in the PDF." Sept. 1, 2023 Order. Subsequently, on September 11, 2023, Plaintiff filed the instant Motion, a memorandum of law, affidavits, and declarations in support of the Motion, and allegedly served copies upon Brocking. *See* ECF Nos. 20 & 21. Plaintiff's Motion requests that the Court (1) enter an order of default judgment

---

[2] Mr. Napolitano is a non-party to this case, who Plaintiff used to effectuate service on July 5, 2023. *See* ECF No. 13.

[3] The notice of Pendency of Action was filed and received by the Suffolk County Clerk's office on March 8, 2023. ECF No. 20-11.

pursuant to Rule 55(b)(2); (2) grant Plaintiff a judgment of foreclosure and sale pursuant to RPAPL §§ 1354 and 1355; (3) appoint a referee to effectuate a sale of the Subject Property and to disburse the funds from such sale pursuant to RPAPL § 1611 and Rule 53 of the Federal Rules of Civil Procedure; and (4) order that Defendant's interests in the property be extinguished. ECF No. 20-1 at 4. According to Plaintiff, the outstanding principal balance due on the loan is $291,559.72 (as of August 18, 2023) plus interest, costs, escrow advances, and disbursements for a grand total of $374,462.25. ECF No. 20-1 at 2.

Notably, Plaintiff claims to have served its default judgment motions on Defendant at both the Subject Property and the 7 Maple Grove Court address. ECF Nos. 19 & 21; *see also* Local Rule 55.2(c) ("Unless otherwise ordered by the Court, all papers submitted to the Court pursuant to Local Civil Rule 55.2(a) or (b) above shall simultaneously be mailed to the party against whom a default judgment is sought at the *last known residence of such party* (if an individual.") (emphasis added)).

## II.     LEGAL STANDARDS

### A.     Default Judgement

A motion for default judgment is governed by Rule 55, which sets out a two-part standard that must be met for a default judgment to be ordered. First, the moving party must obtain a certificate of default from the Clerk of the Court and then the moving party may apply for entry of a default judgment. *See, e.g.*, *Windward Bora LLC v. Thomas*, No. 20-CV-6046, 2022 WL 5114489, at *3 (E.D.N.Y. Sept. 30, 2022). If a default is granted, the factual allegations of the well-pleaded are deemed true. *See Id.* at *3 (internal citation omitted). The Court, however, has the responsibility "to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Id.* (internal citation omitted). "Accordingly, prior to entering a default

7

judgment, the court must determine whether the plaintiff's allegations establish the defendant's liability 'as a matter of law.'" *Id.* (quoting *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015)).

### B. Foreclosure

Under the RPAPL, a plaintiff seeking foreclosure must show (1) the existence of the mortgage and mortgage note, (2) ownership of said mortgage, and (3) the defendant's default on the loan secured by the mortgage. *See Wilmington PT Corp. v. Tiwana*, 19-CV-2035, 2023 WL 4673777, at *7 (E.D.N.Y. June 12, 2023) (citing *Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 414 (E.D.N.Y. 2018)). For a plaintiff to establish a *prima facie* entitlement to judgment they must submit the mortgage, the unpaid note, and evidence of the default. *See Wilmington PT Corp.*, 2023 WL 4673777 at *7. Upon that showing, the burden then shifts to defendant to rebut the plaintiff's evidence and can only be overcome by an affirmative showing by the mortgagor. *Id.*

### C. RPAPL

Plaintiff must also abide by the strict procedures set forth by the RPAPL. For example, Section 1304 requires at least 90-day notice before the mortgage servicer commences legal action against the borrower, as follows:

> Section 1304 of the RPAPL requires that, at least 90 days before commencing a home foreclosure action, a notice of default on the mortgage loan be sent by registered or certified mail and also by first-class mail to *the last known address of the borrower, and to the residence that is subject to the mortgage*. Section 1304 also prescribes the contents of the notice.

*Bullock*, 2022 WL 18299810, at *2–3 (quoting *Windward Bora LLC v. Armstrong*, No. 18-cv-6355, 2021 WL 606713, at *5 (E.D.N.Y. Feb. 16, 2021) (internal quotations and citations

8

omitted)) (emphasis added); *accord Cadet*, 2023 WL 6358070 at *2; *Meurer*, 2023 WL 6593773 at *2; *Powell*, 2020 WL 4932145, at *2.

"Proper service of [] RPAPL 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of this condition." *Bullock*, 2022 WL 18299810 at *3 (citing *CIT Bank N.A. v. Schiffman*, 999 F.3d 113, 116 (2d Cir. 2021)). "[F]ailure to strictly comply with section 1304 'is a sufficient basis to deny foreclosure relief.'" *Id.* at *3 (citation omitted).[4]

## III. DISCUSSION

As explained below, Plaintiff has not satisfied its affirmative obligation under RPAPL Section 1304 to properly serve the 90-notice of default on Defendant before commencing this lawsuit. This fatal procedural infirmity requires the undersigned to recommend that the Court deny the Motion. Additionally, this finding obviates the need to address possible liability and damages in connection with the Motion.

RPAPL Section 1304 clearly requires that the assignee of a mortgage send a notice of default "at least 90 days before commencing a home foreclosure action," to "the *last known address of the borrower*, *and* to the residence that is subject to the mortgage." *Bullock*, 2022 WL 18299810 at *2 (citing *Armstrong*, 2021 WL 606713, at *5 (E.D.N.Y. Feb. 16, 2021) (emphasis added)); *accord Cadet*, 2023 WL 6358070 at *2; *Meurer*, 2023 WL 6593773 at *2; *Powell*, 2020 WL 4932145, at *2.

---

[4] Additionally, each lender, assignee, or mortgage loan servicer is required to file notice with the Superintendent of New York State Department of Financial Services. RPAPL § 1306. As to the Motion, the Court may consider other relevant portions of the RPAPL: § 1351, which governs the judgment of sale; § 1354, which governs the distribution of proceeds of sales; and § 1611, which governs the appointment of a referee in a final order.

9

Here, Plaintiff sent the 90-day notice only to 33 Redington Street, which is the residence subject to the mortgage. *See* ECF No. 20-3 at 18, 28. There is nothing, however, in the affidavits or appended to the Complaint that demonstrates that the notice also was sent "to the last known address of the borrower." RPAPL § 1304. The record before the Court is devoid of any evidentiary support that 33 Redington Street was Defendant's "last known address." Plaintiff carries "the burden of establishing satisfaction of this condition" and failed to meet it here. *Bullock*, 2022 WL 18299810 at *3.

In fact, the only evidence on this point in the record suggests Defendant's last known address was elsewhere and not at the Subject Property. After Judge Irizzary directed Plaintiff to serve the Complaint, Plaintiff purported to do so, not on Defendant himself, but apparently on his father on July 5, 2023. ECF No. 13. Furthermore, this purported service was made at 7 Maple Court Grove in Baldwin and, according to the Affidavit of Service, that was "the defendant's dwelling place/usual place of abode" and Defendant's father "resided at said premises with the defendant."[5] *Id.* The evidence indicates that Defendant last resided at 7 Maple Grove Court and not at the Subject Property. *See Bullock*, 2022 WL 18299810 at *3. ("And while in some cases, one can infer that the last known address of the borrowers is the same as that of the mortgaged property, the evidence here is to the contrary."). Plaintiff thus was also required to serve the Section 1304 notice on Defendant at 7 Maple Grove Court, as well as at the Subject Property. *See Bullock*, 2022 WL 18299810 at *3 ("The motion papers—in compliance with Rule 55.2— were served, as required, at Defendants' last known residential addresses: 512 Walnut Woods

---

[5] The motion papers pursuant to Rule 55.2 also were served at "7 Maple Grove Ct, Baldwin, New York." ECF No. 21. Furthermore, Plaintiff served the Notice of Impending Dismissal, Plaintiff's Motion for Extension of Time, the June 27, 2023 Order granting Plaintiff's motion for extension of time, the Returned Executed Summons filed on July 17, 2023, Plaintiff's Request for Certificate of Default, the Clerk's Entry of Default dated August 10, 2023, and the Electronic Order filed August 25, 2023 by mailing copies of the same to both 7 Maple Grove Court and 33 Redington Street. *See* ECF No. 16.

Drive, Morrisville, North Carolina 27560 and 28 Jefferson Avenue, Massapequa Park, New York 11762. But if these were their last known residential addresses, the section 1304 notice should have been sent there."); *see also Cadet*, 2023 WL 6358070 at *2 ("The R&R points out that FMC served [Defendant] Dorvil with process at an address on Kings Highway, not at the Property, and served the motion for default judgment by mailing it to the Kings Highway address. Reasoning that these actions implied that Dorvil's last known address was on Kings Highway, and noting that FMC sent Dorvil's 90-day notice to the Property, the R&R holds that FMC did not comply with the service requirements of § 1304(2)"); *Powell*, 2020 WL 4932145, at *2 ("Judge Pollak observed that while Freedom Mortgage attested that it mailed a § 1304 notice to the property address 90 days before initiating this action, it later served [Defendant] Powell with a summons and complaint at an entirely different address in Kentucky."); *Windward Bora, LLC v. Thompson*, No. 18-CV-1811, 2020 WL 1242828 at *3 (E.D.N.Y. Mar. 16, 2020) ("Because Thompson is alleged to reside at a different address than that of the Subject Property, plaintiff was required to serve her with the 90-day notice at both addresses.").

Freedom and its counsel clearly should have recognized this fatal defect in the present Motion as they have made this same mistake regarding defective Section 1304 notices in other cases in this District and their default judgment motions have been denied as a result. *See, e.g.*, *Cadet*, 2023 WL 6358070; *Meurer*, 2023 WL 6593773; *Bullock*, 2022 WL 18299810; *Powell*, 2020 WL 4932145.  The Court is troubled by the fact that Freedom nonetheless continues to file motions with this same error again and again in this District.  As the Second Circuit has recognized, it is not the "court's job either to do the [parties'] homework or to take heroic measures aimed at salvaging the [parties] from the predictable consequences of self-indulgent lassitude." *Restivo v. Hessemann*, 846 F.3d 547, 592 (2d Cir. 2017).

11

Therefore, Plaintiff failed to satisfy the procedural requirements of Section 1304 before filing this lawsuit. Because "failure to *strictly comply* with section 1304 is a sufficient basis to deny foreclosure relief," the Court must deny the Motion. *Armstrong*, 2021 WL 606713, at *6 (emphasis added).

## V.   CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court deny the Motion and order that Plaintiff must file a letter attaching proof of compliance with Section 1304 before it may file another motion seeking a default judgment and any other relief. *See Bullock*, 2022 WL 18299810 at *4 ("before permission to file another motion is granted, it should be ordered to provide a letter that contains proof of compliance with RPAPL sections 1304 and 1306").

## VI.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Irizarry. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

**SO ORDERED**:

Dated: Central Islip, New York
February 5, 2024

s/ Lee G. Dunst
_____
**LEE G. DUNST**
United States Magistrate Judge